THEODORE J. KURTZ
NEVADA BAR NO. 1344
SELMAN BREITMAN LLP
3993 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169-0961
Telephone:    702.228.7717
Facsimile:    702.228.8824
Email:        tkurtz@selmanbreitman.com

Attorneys for Plaintiff/Counter-
Defendant WESTERN HERITAGE
INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WESTERN HERITAGE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>NATIONAL SURETY CORPORATION; ASSOCIATED INDEMNITY CORPORATION; and DOES I-X, inclusive,<br><br>        Defendants. | Case No.   2:14-cv-00118-KJD-VCF<br><br>**MOTION FOR SUMMARY JUDGMENT ON BEHALF OF THE PLAINTIFF AND COUNTERDEFENDANT WESTERN HERITAGE INSURANCE COMPANY** |
| NATIONAL SURETY CORPORATION; and ASSOCIATED INDEMNITY CORPORATION,<br><br>        Counter-Claimants,<br><br>    v.<br><br>WESTERN HERITAGE INSURANCE COMPANY,<br><br>        Counter-Defendant. | |

COMES NOW plaintiff/counterdefendant Western Heritage Insurance Company (hereinafter "Western Heritage"), by and through its counsel Theodore J. Kurtz of Selman Breitman LLP and

Selman Breitman LLP
ATTORNEYS AT LAW

hereby submits the following motion for summary judgment seeking an order from this court declaring that the defendants/counterclaimants National Surety Corporation (hereinafter "National Surety") and Associated Indemnity Corporation (hereinafter "Associated Indemnity") breached their duty to defend Donahue Schriber Realty Group LP (hereinafter "Donahue Schriber"), that they owe contribution and indemnity to Western Heritage for its defense of Donahue Schriber, and that the counterclaim against Western Heritage be dismissed.  This motion is made pursuant to FRCP 56 and Local Rule 56-1, and based on all of the pleadings and papers on file herein, together with the following memorandum of points and authorities, the exhibits and affidavits attached hereto, and such arguments of counsel as the court may allow.

DATED: June 1, 2015          SELMAN BREITMAN LLP


                             By:   _/s/ Theodore J. Kurtz_
                                   THEODORE J. KURTZ
                                   NEVADA BAR NO. 1344
                                   3993 Howard Hughes Parkway, #200
                                   Las Vegas, NV 89169-0961
                                   Phone: 702.228.7717
                                   Facsimile: 702.228.8824
                                   Attorneys for Plaintiff/Counter-
                                   Defendant WESTERN HERITAGE
                                   INSURANCE COMPANY


### MEMORANDUM OF POINTS AND AUTHORITIES

I.   **SUMMARY OF THE FACTS**

     Donahue Schriber, the direct insured of National Surety, owned the El Dorado Village Shopping Center.  Donahue Schriber leased to Train Stop, Inc., (hereinafter "Papa John's Pizza"), the direct insured of Associated Indemnity, a building in El

Dorado Village.  The lease between Papa John's Pizza and Donahue
Schriber required Papa John's Pizza to, among other things,
indemnify Donahue Schriber for any real or alleged damages or
injuries from claims arising out of or connected with Papa John's
use of the leased premises.  Donahue Schriber is an additional
insured on the Associated Indemnity policy issued to Papa John's
Pizza.  Both National Surety and Associated Indemnity are
Fireman's Fund affiliated companies.

Malco Nevada, Inc. (hereinafter "Malco"), the direct insured
of Western Heritage, entered into a contract with Donahue
Schriber to, among other things, perform maintenance and cleaning
at El Dorado Village.  The contract between Malco and Donahue
Schriber required, among other things, that Malco indemnify and
defend Donahue Schriber against any and all claims for injury
resulting from Malco's negligence or willful misconduct, except
where such claim is the result of the sole gross negligence or
willful misconduct of Donahue Schriber.

On September 3, 2005, Ms. Tyrin Salinas, an employee of Papa
John's Pizza, while carrying the garbage to the dumpster in the
rear of the Papa John's Pizza building, a common area of the
leased premises, slipped and fell on algae that was located on
the sidewalk she was walking on as she was proceeding to the
dumpster.  Ms. Salinas suffered personal injuries and sued
Donahue Schriber and Malco in Nevada State Court (hereinafter
"the underlying action").

Western Heritage provided a defense for Malco.  The
defendants herein, National Surety and Associated Indemnity,
provided a defense for Donahue Schriber for approximately three

Selman Breitman LLP
ATTORNEYS AT LAW

94622.1 257.31545

Selman Breitman LLP
ATTORNEYS AT LAW

1   years and made equal settlement offers on behalf of Donahue

2   Schriber.  They then abandoned their defense of Donahue Schriber

3   when Western Heritage accepted a tender of defense from the

4   defendants on behalf of Donahue Schriber approximately four

5   months before trial.

6       The contract between Malco and Donahue Schriber required

7   Malco to pressure wash the sidewalks of the El Dorado Village

8   during the first week of each month.  Pursuant to the lease

9   agreement between Donahue Schriber and Papa John's Pizza, Donahue

10  Schriber remained responsible for all common areas.  The algae on

11  the sidewalk was the result of water leaking from the swamp

12  cooler being used by Papa John's Pizza.  This leak and the

13  resulting algae had been present for a number of years prior to

14  the slip and fall of Salinas on September 3, 2005.

15      Before the slip and fall of Salinas on September 3, 2005,

16  the property manager of Donahue Schriber, Mr. Henry Avila, knew

17  about the water and algae on the sidewalk.  He knew this was part

18  of the common area that Donahue Schriber was responsible to

19  maintain in a safe condition.  He also knew that the source of

20  the water causing the algae was from the Papa John's swamp

21  cooler.  Mr. Avila did nothing about the water and algae other

22  than telling the Papa John's representative to fix it.  However,

23  Papa John's did not do so and Mr. Avila never followed up with

24  Papa John's about repairs.  Additionally, Mr. Avila and Donahue

25  Schriber did not exercise their right to fix the swamp cooler

26  themselves and bill the tenant Papa John's for the repair,

27  pursuant to the lease agreement.  As further explained herein,

28  the jury awarded Ms. Salinas $2,181,750 which was apportioned 90%

Selman Breitman LLP
ATTORNEYS AT LAW

1  to Donahue Schriber and 10% to Malco, and a joint and several

2  judgment was entered against Donahue Schriber and Malco.  There

3  was no award against Papa John's Pizza.

4      During the underlying action, a third-party complaint was

5  filed by Donahue Schriber against Papa John's Pizza.  However,

6  National Surety and Associated Indemnity authorized the dismissal

7  of all causes of action against Papa John's Pizza to avoid

8  getting into an expensive legal battle between two parties that

9  they insured.  Consequently, this third-party complaint was

10  dismissed with prejudice.[1]

11      Additionally, during the underlying action, National Surety

12  and Associated Indemnity agreed to make equal settlement offers

13  on behalf of Donahue Schriber which were not accepted.

14      After the failed settlement attempt and once Papa John's

15  Pizza could no longer be made a party to this litigation because

16  of the dismissal with prejudice of the third-party complaint

17  against Papa John's Pizza, National Surety and Associated

18  Indemnity, approximately four months before the February 28, 2011

19  trial, tendered the defense of Donahue Schriber to Western

20  Heritage.  This was after National Surety and Associated

21  Indemnity had already been defending Donahue Schriber for

22  approximately three years.  Because the contract between Malco

23  and Donahue Schriber qualified as an insured contract, Western

24  _____

[1] Because of the workers' compensation law, Malco could not file a third-party
25  complaint against Papa John's Pizza.  However, because of the independent
indemnity contract between Donahue Schriber and Papa John's Pizza, Donahue
26  Schriber could proceed with a third-party complaint.  See *American Federal*
*Savings v. Washoe* County, 106 Nev. 869 at 875 (1990).  However, when National
27  Surety and Associated Indemnity on behalf of Donahue Schriber voluntarily gave
up that right, Papa John's Pizza could no longer be made a party to the
28  underlying litigation.

1   Heritage accepted the tender of defense of Donahue Schriber.

2   Once Western Heritage accepted the tender of defense, Associated

3   Indemnity and National Surety abandoned their defense of Donahue

4   Schriber, denied any indemnity obligation, closed the file, and

5   refused to equally participate with Western Heritage in a

6   settlement offer on behalf of Donahue Schriber.

7        In a letter to Western Heritage confirming their abandonment

8   of the defense of Donahue Schriber, the representative of

9   National Surety and Associated Indemnity explained that in his

10  opinion Malco and Western Heritage would have to indemnify

11  Donahue Schriber for any damages awarded against Donahue

12  Schriber.  However, such an opinion is clearly and blatantly

13  incorrect because the defendants herein failed to properly

14  consider the potential that the indemnity agreement between Malco

15  and Donahue Schriber would not require Malco to indemnify Donahue

16  Schriber for its own negligence.  This would include the

17  negligent conduct of Henry Avila, Donahue Schriber's own property

18  manager, in failing to make safe the sidewalk after he became

19  aware of the dangerous condition, because of the presence of

20  algae on the sidewalk and his failure to ensure that the faulty

21  Papa John's swamp cooler, which was the source of the water

22  causing the algae was repaired.

23       After the defendants herein had abandoned their defense of

24  Donahue Schriber, counsel for Tyrin Salinas in the underlying

25  action served on January 7, 2011 separate offers of judgment for

26  $995,000 to Donahue Schriber and to Malco.  Also, counsel for

27  Tyrin Salinas in the underlying action sent a letter dated

28  January 7, 2011 describing a global settlement demand in the sum

94622.1 257.31545

1    of $995,000.  The offers of judgment and the settlement demand
2    were not accepted.

3        As a result of a jury trial, the personal injury plaintiff
4    Tyrin Salinas was awarded $2,181,750 and the jury apportioned 90%
5    liability to Donahue Schriber and 10% liability to Malco.  A
6    joint and several judgment was entered against Malco and Donahue
7    Schriber.  Both Donahue Schriber and Malco appealed to the Nevada
8    Supreme Court.  The court remanded the case to the State District
9    Court for a retrial on damages only which is presently scheduled
10   for October 12, 2015.

11   **II.   SUMMARY OF ARGUMENT**

12       By their conduct the two Fireman's Fund affiliated
13   companies, National Surety and Associated Indemnity, have
14   admitted that they have a duty to defend Donahue Schreiber and
15   have breached that duty.  Because of this breach, National Surety
16   and Associated Indemnity must pay contribution and indemnity to
17   Western Heritage and have no standing to pursue a counterclaim
18   against Western Heritage for not settling the underlying action
19   and proceeding to trial.

20       National Surety and Associated Indemnity must pay two-thirds
21   of the past defense fees and costs paid by Western Heritage in
22   defending Donahue Schriber in the underlying litigation.
23   Additionally, these defendants must pay two-thirds of the past,
24   non-bond related appeal attorneys' fees and costs paid by Western
25   Heritage pertaining to the appeal of Donahue Schriber.
26   Furthermore, these defendants must fully indemnify and pay for
27   90% of all damages awarded to Tyrin Salinas in the underlying
28   action without any contribution from Western Heritage or Malco.

Selman Breitman LLP
ATTORNEYS AT LAW

94622.1 257.31545

The 90% negligence apportioned to Donahue Schriber came from its own negligence for which it does not deserve to be indemnified by either Malco or Papa John's Pizza, or it arose from the negligence of Papa John's Pizza, in which Papa John's Pizza should be indemnifying Donahue Schriber.  It is only because the National Surety and Associated Indemnity sacrificed Donahue Schriber's indemnity rights against Papa John's Pizza that National Surety and Associated Indemnity are now looking to Western Heritage to pay for negligence which belongs to Donahue Schriber itself and/or Papa John's Pizza.

Additionally, National Surety and Associated Indemnity must fully pay for the cost of the appeal bond posted on behalf of Donahue Schriber without any contribution from Western Heritage or Malco.  Also, these defendants must also pay for two-thirds of Donahue Schriber's defense fees and costs in the retrial of damages ordered by the Nevada Supreme Court.

Also, the counterclaim of the defendants alleging that Western Heritage must pay the full amount of all damages awarded against Donahue Schriber in the underlying action because Western Heritage failed to accept the $995,000 global settlement demand which is allegedly within the Western Heritage $1,000,000 liability policy limit, must be dismissed because at the time the offers of judgment and the global settlement demand were made, these defendants/counterclaimants were in breach of their respective duty to defend.  Additionally, the global settlement demand did not include the payment of the workers' compensation lien of $8,615.49 which when combined with the $995,000 demand would exceed the $1,000,000 policy limit of the Malco policy.

8

1   Furthermore, the defendant's allegations that the attorney

2   retained by Western Heritage mishandled the defense of Donahue

3   Schriber are without merit.  Western Heritage retained counsel to

4   defend Donahue Schriber and as such, National Surety and

5   Associated Indemnity are not considered to be his clients.

6       Additionally, the defendants knew about the trial strategy

7   and knew how the actual trial was progressing because they hired

8   an investigator to attend and report about the trial of the

9   underlying action, but made no complaints against the attorney

10  for Donahue Schriber until after the trial.  Furthermore, it was

11  the defendants themselves, through the defense counsel they

12  retained to defend Donahue Schriber, who mishandled the defense

13  of Donahue Schriber.  The defendants, in order to avoid an

14  expensive legal battle between two insured parties, voluntarily

15  dismissed with prejudice the third-party complaint against Papa

16  John's Pizza, who was the one responsible for allowing the swamp

17  cooler to leak water onto the sidewalk which facilitated the

18  growth of the algae upon which the plaintiff in the underlying

19  action slipped and fell, and who owed express indemnity to

20  Donahue Schriber for any claim arising out of the use of the

21  leased premises.

22      The counterclaim of National Surety and Associated Indemnity

23  must be dismissed and they must pay contribution to Western

24  Heritage for the defense fees and costs Western Heritage incurred

25  in defending Donahue Schriber and they must be held responsible

26  for indemnifying Donahue Schriber for all liability apportioned

27  to Donahue Schriber without any contribution from Western

28  Heritage or Malco.

Selman Breitman LLP
ATTORNEYS AT LAW

9

94622.1 257.31545

**III. STATEMENT OF UNDISPUTED FACTS**

Donahue Schriber leased building space to Papa John's Pizza in the El Dorado Village.  The lease between Papa John's Pizza and Donahue Schriber required, among other things, that Papa John's Pizza shall "indemnify DONAHUE SCHRIBER for any real or alleged damages or injury from all claims[,] judgments, liabilities, costs expenses, including attorneys' fees and costs, arising out of or connected with Tenant's use of the Premises and its facilities..[.]"  Further, DONAHUE SCHRIBER "shall not be liable for any damage or liability of any kind or for any injury to or death of persons or damage to property of Tenant or any other person occurring … from any cause whatsoever related to the use, occupancy or enjoyment of the Premises by Tenant…[.]"  (See Exhibit A.)

Donahue Schriber contracted with Malco to clean and maintain portions of the El Dorado Village, including power washing the sidewalk once a month.  The contract between Malco and Donahue Schriber required, among other things, that the "CONTRACTOR (Malco) shall indemnify, defend and save harmless the COMPANY, … from and against any and all loss, damage, injury, liability, and claims thereof for injury to or death of any person, …, resulting from CONTRACTOR's negligence or willful misconduct with respect to the work, services or otherwise, CONTRACTOR's acts or negligence at the Center …, except where such loss, damage, injury, liability, or claim is the result of the sole gross negligence or willful misconduct of any indemnitee and is not contributed to by any act of, or by any negligent performance or omission to perform some duty imposed by law or contract on

94622.1 257.31545

Selman Breitman LLP
ATTORNEYS AT LAW

1   CONTRACTOR, any subcontractor or either's agent, or employee."

2   (See Exhibit B.)

3       Donahue Schriber is the direct insured under the policy

4   issued by National Surety and an additional insured under the

5   policy issued by Associated Indemnity to Papa John's Pizza.

6   (Please see paragraph 7 of National Surety's counterclaim against

7   Western Heritage.)

8       Malco is the direct insured under the policy issued by

9   Western Heritage.

10       On September 3, 2005, Tyrin Salinas, an employee of Papa

11   John's Pizza, suffered personal injuries when she slipped on

12   algae on a sidewalk in the common area of the leased premises as

13   she was taking garbage from Papa John's Pizza to the garbage

14   dumpster.  On August 31, 2007, Ms. Salinas filed a complaint

15   against Donahue Schriber.  (See Exhibit C.)  On October 16, 2008,

16   Ms. Salinas filed an amended complaint against Donahue Schriber

17   and Malco.  (See Exhibit D.)

18       Mr. Henry Avila, the property manager of Donahue Schriber,

19   testified that algae on the sidewalk had existed several years

20   before the plaintiff fell on September 3, 2005.  (See pp. 13, 14

21   and 52 of Exhibit E.)  He testified that Donahue Schriber had a

22   duty to maintain the common areas in a reasonably safe condition.

23   (See p. 47 of Exhibit E.)  According to the lease agreement

24   between Donahue Schriber and Papa John's Pizza, the sidewalks are

25   part of the common area.  (See Exhibit A.)  He also testified

26   that Malco performed power washing at the El Dorado Village once

27   a month.  (See p. 19 of Exhibit E.)  He further testified that he

28   never did ask Malco specifically to remove the algae from the

Selman Breitman LLP
ATTORNEYS AT LAW

94622.1 257.31545

Selman Breitman LLP
ATTORNEYS AT LAW

1  sidewalk.  (See p. 14 of Exhibit E.)  Mr. Avila testified that he

2  knew the source of the water causing the algae was from the Papa

3  John's swamp cooler because he went on the roof and actually

4  observed water coming from the swamp cooler.  (See p. 9 of

5  Exhibit E.)  He spoke to the manager of Papa John's Pizza and

6  told him that the swamp cooler needed to be fixed and the manager

7  advised that it would be taken care of.  (See pp. 10-11 of

8  Exhibit E.)  Mr. Avila also testified that he did not follow up

9  to ensure that Papa John's made the repair to the swamp cooler

10 and that Donahue Schriber did not, itself, fix the swamp cooler

11 and charge the repairs to Papa John's Pizza as allowed by the

12 lease.  (See p. 61 of Exhibit E.)

13    National Surety began defending Donahue Schriber its named

14 direct insured.  (See page 4258 of Exhibit F.)

15    In a letter dated October 2, 2009 from counsel retained by

16 National Surety to Papa John's counsel, Jimmy Chin, the defense

17 of Donahue Schriber was tendered to Papa John's Pizza.  (See

18 Exhibit G.  Also, please see page 4256 of Exhibit F.)

19    On December 17, 2009, counsel retained by National Surety to

20 defend Donahue Schriber filed a third-party complaint on behalf

21 of Donahue Schriber against Papa John's Pizza.  (See Exhibit H.)

22    On March 10, 2010, Associated Indemnity, the insurer of Papa

23 John's Pizza, decided to accept the tender of defense of Donahue

24 Schriber and to use the same defense counsel that National Surety

25 had retained to defend Donahue Schriber.  (See page 4255 of

26 Exhibit F.)

27    On March 17, 2010, it was decided between the defendants

28 National Surety and Associated Indemnity to dismiss the third-

1   party complaint against Papa John's Pizza, "…to avoid getting

2   into an expensive legal battle between two parties we insure…."

3   (See page 4253 of Exhibit F.)

4        On or about August 16, 2010, the acceptance of the tender of

5   defense of Donahue Schriber by Associated Indemnity, the insurer

6   of Papa John's Pizza was sent.  (See page 4249 of Exhibit F.)

7        On August 18, 2010, Donahue Schriber's third-party complaint

8   against Papa John's Pizza was dismissed with prejudice.  (See

9   Exhibit I.)

10       On August 31, 2010, National Surety and Associated Indemnity

11   agreed to equally split their obligations to Donahue Schriber in

12   the underlying action and made separate settlement offers to the

13   underlying plaintiff on behalf of Donahue Schriber.  (See pages

14   4248 and 4249 of Exhibit F.)  However, the offers were not

15   accepted and on September 22, 2010, counsel retained by

16   Associated Indemnity to defend Donahue Schriber tendered the

17   defense of Donahue Schriber to Western Heritage.  (See Exhibit

18   J.)

19       According to the October 18, 2010 log note Associated

20   Indemnity acknowledged that since the contract between its

21   insured Papa John's Pizza is with the property owner Donahue

22   Schriber, that it does not have any good risk transfer potential.

23   (See page 4248 of Exhibit F.)

24       In a letter dated October 18, 2010, Western Heritage

25   accepted the tender of defense of Donahue Schriber.  However, it

26   was requested that due to a medical situation that the law firm

27   retained by National Surety and Associated Indemnity continue to

28   represent Donahue Schriber until such time as counsel retained by

13

94622.1 257.31545

Selman Breitman LLP
ATTORNEYS AT LAW

1    Western Heritage could substitute as counsel.  (See Exhibit K.)

2    On December 9, 2010, a substitution of attorney was filed on

3    behalf of Donahue Schriber pursuant to which the attorney

4    retained by Western Heritage to represent Donahue Schriber was

5    substituted in place of counsel retained by Associated Indemnity

6    to defend Donahue Schriber.  (See Exhibit L.)

7    The substitution of attorney occurred after counsel retained

8    by National Surety and Associated Indemnity to defend Donahue

9    Schriber had represented Donahue Schriber in motions in limine in

10   preparation for trial which were decided on December 6, 2010.

11   (See Exhibit M.)

12   On or about December 13, 2010 the defendants closed the

13   file.  (See Exhibit F, p. 4247.)

14   On January 7, 2011, plaintiff's counsel in the underlying

15   action served by mail and facsimile separate offers of judgment

16   to Malco and Donahue Schriber each in the sum of $995,000 which

17   included all fees, costs, attorneys' fees and prejudgment

18   interest, but did not include the workers' compensation lien that

19   exceeded $5,000.  (See Exhibit N.)

20   Even though in the underlying litigation there was no record

21   to show the amount of the workers' compensation benefits the

22   underlying plaintiff received, she did testify in her deposition

23   that she received $8,615.49 in workers' compensation benefits.

24   (See Exhibit O, page 5.)

25   Additionally, in a letter dated January 7, 2011, from

26   counsel for the plaintiff in the underlying action to counsel for

27   Donahue Schriber and counsel for Malco a global settlement demand

28   was made for a total sum of $995,000.  However, this global

Selman Breitman LLP
ATTORNEYS AT LAW

1   demand did not address the workers' compensation lien which is in

2   excess of $5,000.  (See Exhibit P.)

3   The liability limit of the Western Heritage policy issued to

4   Malco is $1,000,000.

5   National Surety and Associated Indemnity knew about the

6   offer of judgment to Donahue Schriber prior to the expiration of

7   the offer.  (See Exhibit Q.)

8   Additionally, National Surety and Associated Indemnity knew

9   about the $995,000 global settlement demand prior to the jury

10  verdict dated March 11, 2011.  (See page 4240 of Exhibit F.)

11  In a February 17, 2011 e-mail from the Western Heritage

12  representative to the Associated Indemnity representative,

13  Western Heritage requested that defendants herein share in the

14  defense and indemnity of Donahue Schriber.  They were

15  specifically requested to contribute half of a settlement offer

16  on behalf of Donahue Schriber.  (See Exhibit R, page 3.)

17  In an e-mail dated February 17, 2011, the Associated

18  Indemnity representative referred the Western Heritage

19  representative to a letter that was mailed on February 9, 2011.

20  (See Exhibit R, page 2.)

21  In response, the Western Heritage representative in an e-

22  mail dated February 17, 2011 again requested an answer as to

23  whether or not defendants herein were willing to contribute half

24  of a settlement offer on behalf of Donahue Schriber.  (See

25  Exhibit R, page 2.)

26  In response, the Associated Indemnity representative, in an

27  e-mail dated February 17, 2011, explained that he would not agree

28  to a 50% contribution.  (See Exhibit R, page 1.)

Selman Breitman LLP
ATTORNEYS AT LAW

15

Then, in a response e-mail dated February 17, 2011, the Western Heritage representative stated,

> Anything less than 50/50 is not acceptable. Since we are so close to trial, it seems we'll just have to settle our differences later. Your arguments for denying the tender are unfounded. Your insured has an obligation to Donahue Schriber, as you well know since you agreed to defend and indemnify them previously. Just because we have also agreed to do that does not eliminate your obligation.
> I will attempt to settle this matter, or try it if necessary, then we'll turn over to our recovery department to communicate with you.

(See Exhibit R, page 1.)

In a letter dated February 24, 2011 addressed to the plaintiff's counsel in the underlying action, a settlement offer was made on behalf of Donahue Schriber by Western Heritage. (See Exhibit S.)

Attached hereto as Exhibit T is a copy of an internal e-mail from the Western Heritage representative describing the evaluation of the plaintiff's underlying case which confirms that counsel representing Malco and counsel representing Donahue Schriber both evaluated the value of the plaintiff's case in the underlying action to be less than the $995,000 global settlement demand.

Attached hereto as Exhibit U is a copy of the letter referenced by the Associated Indemnity representative in his e-mail of February 17, 2011 indicating that the letter had been mailed on February 9, 2011. (See Exhibit R, p. 2.) However, the letter attached hereto as Exhibit U is actually dated

94622.1 257.31545

Selman Breitman LLP
ATTORNEYS AT LAW

1  August 9, 2010.  Additionally, the letter attached hereto as

2  Exhibit U is described in the log notes on page 4245 of Exhibit F

3  with reference dates of 2/3/11 to 2/10/11.  Consequently, the

4  actual date on the letter attached hereto as Exhibit U is in

5  error.  However, this letter (Exhibit U) confirms that National

6  Surety and Associated Indemnity were providing a defense to

7  Donahue Schriber and then abandoned that defense.  Exhibit U

8  specifically explains that the defendants provided a defense for

9  Donahue Schriber, "…up to the point that you [Western Heritage]

10  accepted the tender from Donahue" and that anything that National

11  Surety and Associated Indemnity may owe as the insurers of the

12  property owner Donahue Schriber,"…should be paid back by Malco

13  and its carrier."

14      As the underlying action proceeded towards trial, counsel

15  retained by Western Heritage to defend Donahue Schriber provided

16  defendants with an evaluation.  (See Exhibit V.)

17      Additionally, National Surety and Associated Indemnity

18  retained an investigator to attend and monitor the jury trial and

19  report on the jury trial.  (See page 4244 of Exhibit F.)

20      The jury trial of the underlying action began on

21  February 28, 2011 and ended on March 11, 2011 with a jury verdict

22  in the sum of $2,181,750, which was apportioned 10% to Malco and

23  90% to Donahue Schriber.  A joint and several judgment was then

24  entered against Donahue Schriber and Malco.  (See Exhibit W.)The

25  jury verdict was appealed by Donahue Schriber and Malco.  Donahue

26  Schriber posted a bond based upon the 90% apportionment and Malco

27  posted a bond based upon the 10% apportionment.  (See Exhibit X.)

28      A copy of the decision from the Nevada Supreme Court denying

Selman Breitman LLP
ATTORNEYS AT LAW

94622.1 257.31545

17

1   the appeal concerning liability, but granting the appeal

2   concerning damages and ordering a new trial for damages is

3   attached hereto as Exhibit O.

4        The retrial of damages is presently scheduled for

5   October 12, 2015.  (See Exhibit Y.)

6   **IV.   STANDARDS FOR SUMMARY JUDGMENT**

7        Summary judgment is appropriate "if the pleadings, the

8   discovery and disclosure materials on file, and any affidavits

9   show that there is no genuine issue as to any material fact and

10  that the movant is entitled to judgment as a matter of law."

11  FRCP 56(c).  A fact is "material" if it might affect the outcome

12  of a suit, as determined by the governing substantive law.

13  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

14  2505, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if sufficient

15  evidence exists such that a reasonable fact finder could find for

16  the non-moving party.  *Villiarimo v. Aloha Island Air, Inc.*, 281

17  F.3d 1054, 1061 (9th Cir. 2002).  Initially, the moving party

18  bears the burden of proving there are no genuine issues of

19  material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898

20  (9th Cir. 2002).  As described in this motion, defendant Western

21  Heritage has satisfied its burden to show that there is no

22  genuine issue of material fact.

23  **V.   NATIONAL SURETY AND ASSOCIATED INDEMNITY BREACHED THEIR DUTY**

24  **TO DEFEND WHEN THEY ABANDONED THE DEFENSE OF DONAHUE**

25  **SCHRIBER AFTER WESTERN HERITAGE AGREED TO DEFEND**

26       National Surety and Associated Indemnity had been providing

27  a defense for Donahue Schriber for approximately three years

28  before the defense of Donahue Schriber was tendered to Western

18

Selman Breitman LLP
ATTORNEYS AT LAW

1 Heritage in September 2010.  According to the Nevada Supreme

2 Court in *Benchmark Insurance Company v. Sparks*, 254 P.3d 617 at

3 621 (Nev.2011) an insurer's duty to defend is triggered whenever

4 the potential for coverage arises and continues until the

5 potential for coverage ceases.  The conduct of National Surety

6 and Associated Indemnity in defending Donahue Schriber for

7 approximately three years and making offers of settlement clearly

8 confirms that National Surety and Associated Indemnity recognized

9 that there was a potential for coverage for Donahue Schriber's

10 alleged liability for the injuries to the plaintiff in the

11 underlying action.

12     Based upon the undisputed facts, at no time did the

13 potential for coverage of Donahue Schriber by National Surety and

14 Associated Indemnity cease.  The potential for coverage for

15 Donahue Schriber under the National Surety and Associated

16 Indemnity policies existed throughout the underlying action.

17 Based on the conduct of Henry Avila, there was a potential that

18 Donahue Schriber was itself liable for the underlying plaintiff's

19 injuries for which Malco did not owe indemnity but for which Papa

20 John's Pizza did.  This is confirmed by the jury verdict which

21 apportioned 90% of the liability for the injuries to the

22 plaintiff in the underlying action to the conduct of Donahue

23 Schriber.

24     The undisputed facts confirm that after Western Heritage

25 agreed to defend Donahue Schriber, National Surety and Associated

26 Indemnity abandoned their defense of Donahue Schriber and closed

27 the file.  This is a clear breach of the duty to defend Donahue

28 Schriber.  As explained by this court in *One Beacon Insurance*

19

1   *Company v. Pro Builders Specialty Insurance Company*, 2009 WL
2   2407705 (D.Nev.2009) an insurance company which owes a defense to
3   an insured cannot refuse to provide a defense because the insured
4   is being defended by another insurer that also owes a duty to
5   defend.

6       In support of their decision to abandon the defense of
7   Donahue Schriber, National Surety and Associated Indemnity
8   alleged that Western Heritage would have to pay all damages
9   awarded to the plaintiff in the underlying action because they
10  felt that any damages awarded against Donahue Schriber would have
11  to be paid back by Malco pursuant to the indemnity agreement
12  between Malco and Donahue Schriber.  However, the indemnity
13  agreement between Malco and Donahue Schriber did not require
14  Malco to indemnify Donahue Schriber for Donahue Schriber's own
15  negligence.  See *Reyburn Lawn & Landscape Designers v. Plaster
16  Development Company*, 255 P.3d 268 (Nev.2011).  Consequently, the
17  potential for coverage from National Surety and Associated
18  Indemnity for the injuries suffered by the plaintiff in the
19  underlying action never ceased and National Surety and Associated
20  Indemnity breached their duty to defend Donahue Schriber when
21  they abandoned their defense.

22  **VI.  ONCE AN INSURER BREACHES ITS DUTY TO DEFEND IT HAS NO RIGHT**
23      **TO COMPLAIN ABOUT HOW THE INSURED'S DEFENSE IS HANDLED**

24      Because National Surety and Associated Indemnity breached
25  their duty to defend Donahue Schriber, they have no standing to
26  challenge the manner in which Donahue Schriber was defended by
27  Western Heritage.  In the counterclaim National Surety and
28  Associated Indemnity allege that Western Heritage should pay the

20

Selman Breitman LLP
ATTORNEYS AT LAW

94622.1 257.31545

full amount of any judgment against Donahue Schriber.   Their

position is based upon the failure of Western Heritage to accept

the global settlement demand of $995,000 which allegedly was

within the Western Heritage policy limit of $1,000,000.

This counterclaim of National Surety and Associated

Indemnity is without merit because case law precludes an insurer

from challenging the manner in which a claim was handled, when

the insurer that is challenging the claim handling has itself

breached its duty to defend.

Courts universally agree that if an insurer breaches its

duty to defend the insurer forfeits its right to control the

defense.   See 8 Appleman *Insurance Law and Practice* §36-41 4691

and 49 ALR 2D 755.

The California Court of Appeal for the First District in

*Drinnon v. Allstate Insurance Company*, 24 Cal.App.3d 571 (1972)

specifically explained that once an insurer wrongfully refuses to

defend, the insured is released from his or her obligations to

leave the management of the claim to the insurer and the insured

is then justified in proceeding on his or her own account in

whatever manner seems proper under the circumstances.   *Id*. at

580.   Additionally, the California Court of Appeal, First

District in *North American Ins. Co. v. Insurance Company of North

America*, 140 Cal.Rptr. 828 (1977) stated,

> No insurer which deliberately breaches its
>
> obligation to the insured should be permitted
>
> thereby to profit, whether at the expense of
>
> the insured, or of an insurer which
>
> faithfully discharges its obligation.   *Id*. at

21

1     835.

2        Consequently, because National Surety and Associated

3     Indemnity clearly breached their duty to defend Donahue Schriber,

4     their counterclaim against Western Heritage based on the failure

5     of Western Heritage to accept the $995,000 global settlement

6     demand must be dismissed.

7        Additionally, based upon the undisputed facts of this case,

8     when the $8,615.49 workers' compensation lien is added to the

9     $995,000 global settlement demand, it is obvious that there was

10    no opportunity that Western Heritage had to settle within its

11    $1,000,000 policy limit.  The January 7, 2011 global settlement

12    demand letter from counsel for plaintiff in the underlying action

13    did not include payment of the workers' compensation lien.

14    Therefore, the counterclaim of National Surety and Associated

15    Indemnity must be dismissed on the additional basis that there

16    was no opportunity for a global settlement within the $1,000,000

17    Western Heritage policy limit.

18    **VII.  WESTERN HERITAGE IS ENTITLED TO CONTRIBUTION FROM NATIONAL**

19    **SURETY AND ASSOCIATED INDEMNITY FOR THE COSTS IT PAID TO**

20    **DEFEND DONAHUE SCHRIBER**

21        According to this court's opinion in *Maryland Casualty*

22    *Company v. National Fire & Marine Insurance Company*, a non-

23    reported decision found at 2012 WL 320640 (D.Nev.2012), citing

24    the California case of *Fireman's Fund Insurance Company v.*

25    *Maryland Casualty Company*, 65 Cal.App.4th 1279 (2002), an insurer

26    has standing to seek contribution from another insurer where the

27    insurer's insure the same insured and cover the same risk.

28    According to this court's decision in *Assurance Company of*

22

1   *America v. National Fire & Marine Insurance Company*, a non-
2   reported decision at 2012 WL 2589883 (D.Nev.2012), contribution
3   arises when several insurers are obligated to defend or indemnify
4   the same loss or claim and one insurer has paid more than its
5   share of the loss or defended the action without any
6   participation by the others.   Additionally, where multiple
7   insurance carriers insure the same insured and cover the same
8   risk, each insurer has independent standing to assert a cause of
9   action against the co-insurers for equitable contribution when it
10  has undertaken the defense or indemnification of the common
11  insured.

12      Based upon the clear facts of the underlying case, Donahue
13  Schriber should have been defended by three insurers.   Western
14  Heritage agreed to defend Donahue Schriber since it is possible
15  that some of Donahue Schriber's liability was caused by Malco.
16  Additionally, National Surety as Donahue Schriber's direct
17  insurer had a duty to defend Donahue Schriber since it is
18  possible that part of Donahue Schriber's liability arose from its
19  own negligence.   Furthermore, Associated Indemnity had a duty to
20  defend Donahue Schriber since Donahue Schriber was an additional
21  insured and it is possible that part of Donahue Schriber's
22  liability was caused by the negligence of Papa John's Pizza who
23  agreed to indemnify Donahue Schriber.   Therefore, the defense
24  fees and costs incurred by Western Heritage in defending Donahue
25  Schriber in the underlying action should be apportioned two-
26  thirds to the Fireman's Fund Companies, National Surety and
27  Associated Indemnity, and one-third to Western Heritage.
28  Likewise, the non-bond attorneys' fees and costs associated with

Selman Breitman LLP
ATTORNEYS AT LAW

94622.1 257.31545

1  the appeal of Donahue Schriber and the attorneys' fees and costs
2  for the retrial of damages in the underlying action should be so
3  apportioned.

4  VIII.    **NATIONAL SURETY AND ASSOCIATED INDEMNITY MUST PAY 90%**
5            **OF THE DAMAGES AWARDED TO THE PLAINTIFF IN THE UNDERLYING**
6            **ACTION**

7            Based upon the undisputed facts, the water leak which caused
8  the algae on the sidewalk on which the underlying plaintiff
9  Salinas slipped and fell emanated from Papa John's Pizza.
10 Representatives of Papa John's Pizza and Donahue Schriber both
11 knew about the water leak and the formation of algae on the
12 sidewalk.  Therefore, Papa John's Pizza as the tenant, and
13 Donahue Schriber as the owner, both had a duty to protect
14 individuals, including the underlying plaintiff Salinas, from
15 this dangerous condition, i.e., algae on the sidewalk.

16          Malco allegedly had the responsibility for pressure washing
17 the sidewalk.  However, if Malco had an obligation to pressure
18 wash this sidewalk, it was only required pursuant to the
19 contract, to do so once a month.  As soon as Malco would have
20 cleaned the sidewalk, the whole algae growing process would have
21 started again, because Papa John's Pizza did not stop the leak
22 and Donahue Schriber ignored the hazard and allowed the leak to
23 continue.

24          Donahue Schriber had a contract with Malco which required
25 Donahue Schriber to be indemnified for liability imposed upon it
26 due to the negligence of Malco.  Additionally, Donahue Schriber
27 had a lease with Papa John's Pizza which required Donahue
28 Schriber to be indemnified for liability imposed upon it due to

24

Selman Breitman LLP
ATTORNEYS AT LAW

94622.1 257.31545

1   the negligence of Papa John's Pizza.

2       The jury determined that Malco was 10% negligent and Donahue

3   Schriber was 90% negligent.  The negligence attributed to Donahue

4   Schriber had to either come from its own negligence or Papa

5   John's Pizza's negligence.  It is absolutely logical that Donahue

6   Schriber and Papa John's Pizza would have more negligence than

7   Malco since Papa John's Pizza and Donahue Schriber allowed the

8   leak to take place and continue and never fixed it while Malco

9   was only required to wash the sidewalk once a month.

10       As explained above, the percentage of negligence apportioned

11   to Donahue Schriber had to come from its own negligence for which

12   it is not entitled to be indemnified by Malco or it arose from

13   the negligence of Papa John's Pizza, in which Papa John's Pizza

14   should be indemnifying Donahue Schriber.  Furthermore, as

15   explained herein, Donahue Schriber, the only party that could do

16   so, filed a third-party complaint against Papa John's Pizza which

17   was voluntarily dismissed with prejudice.

18       Why this was done was initially a mystery since it is not

19   conceivable that Donahue Schriber would want to give up its

20   indemnity rights against Papa John's Pizza, a party who is

21   clearly negligent.  The explanation lies in the fact that one

22   Fireman's Fund insurer, National Surety, insured Donahue Schriber

23   and another Fireman's Fund insurer, Associated Indemnity, insured

24   Papa John's Pizza, and Fireman's Fund felt that it was bad

25   litigation economics to file a third-party complaint against a

26   party by whom it would have to defend and indemnify.  The

27   Fireman's Fund Companies, National Surety and Associated

28   Indemnity, by manipulating and dismissing the third-party

Selman Breitman LLP
ATTORNEYS AT LAW

94622.1 257.31545

Selman Breitman LLP
ATTORNEYS AT LAW

1   complaint against Papa John's Pizza, acted inappropriately by

2   sacrificing the indemnity rights of its insured, Donahue

3   Schriber, in order to save defense costs.

4       The negligence of Papa John's Pizza would have been

5   determined by the jury in the underlying action except for the

6   dismissal of the third-party complaint at the direction of

7   National Surety and/or Associated Indemnity, which are members of

8   The Fireman's Fund Group of Insurance Companies.  This dismissal

9   was orchestrated by National Surety and/or Associated Indemnity

10   for their own benefit.

11       The percentage of negligence apportioned to Donahue Schriber

12   in the underlying action on the jury verdict is the result of

13   Donahue Schriber's own negligence and/or the result of the

14   negligence of Papa John's Pizza, not Malco's negligence which was

15   apportioned at 10%.

16       If the Fireman's Fund Companies had maintained the Donahue

17   Schriber third-party complaint against Papa John's Pizza, then

18   Papa John's Pizza, through its Fireman's Fund insurer, would be

19   indemnifying Donahue Schriber and Donahue Schriber would not be

20   asserting an indemnity claim against Malco and Western Heritage.

21   It is only because the Fireman's Fund insurer sacrificed Donahue

22   Schriber's rights that Donahue Schriber is now looking towards

23   Western Heritage to pay for negligence which belongs to one or

24   both of the Fireman's Fund Insurance Companies insureds.

25       Consequently, the Fireman's Fund Insurance Companies,

26   National Surety and/or Associated Indemnity, must be held

27   responsible for indemnifying Donahue Schriber for all liability

28   apportioned to Donahue Schriber without any contribution from

94622.1, 257.31545

1  Western Heritage or Malco because the indemnity apportioned to

2  Donahue Schriber is based upon Donahue Schriber's own negligence

3  or the negligence of Papa John's Pizza.

4      Furthermore, based on the above indemnity analysis, the

5  Fireman's Fund Companies, National Surety and/or Associated

6  Indemnity, are responsible for paying the full amount of the cost

7  of the appeal bond on behalf of Donahue Schriber without any

8  contribution from Western Heritage.

9  **IX.**  **CONCLUSION**

10      Based upon the undisputed facts and case law it is clear and

11  there is no genuine issue of material fact regarding the breach

12  of the duty to defend Donahue Schriber by National Surety and

13  Associated Indemnity.  Because of this breach the counterclaim of

14  National Surety and Associated Indemnity must be dismissed

15  because National Surety and Associated Indemnity have no standing

16  to challenge the manner in which Western Heritage handled the

17  defense of Donahue Schriber subsequent to National Surety and

18  Associated Indemnity's breach of their duty to defend Donahue

19  Schriber by abandoning the defense of Donahue Schriber when

20  Western Heritage agreed to accept the defense of Donahue

21  Schriber.

22      Furthermore, based on the undisputed facts and case law, it

23  is clear and there is no genuine issue of material fact that

24  National Surety and Associated Indemnity must (a) pay two-thirds

25  of the defense fees and costs that Western Heritage incurred in

26  defending Donahue Schriber in the underlying action, (b) must

27  fully pay for the cost of the appeal bond posted on behalf of

28  Donahue Schriber without any contribution from Western Heritage,

Selman Breitman LLP
ATTORNEYS AT LAW

27

1  (c) must pay two-thirds of the non-bond related appeal attorneys'

2  fees and costs pertaining to the appeal of Donahue Schriber, (d)

3  must pay for two-thirds of Donahue Schriber's defense fees and

4  costs pertaining to the new trial ordered by the Nevada Supreme

5  Court concerning damages in the underlying action, and (e) must

6  fully indemnify Donahue Schriber for the 90% liability

7  apportioned to Donahue Schriber without any contribution from

8  Western Heritage or Malco.

9  Since the total damages to be awarded to the plaintiff in

10  the underlying action have not been finally determined and

11  because attorneys' fees and costs are still being incurred for

12  the defense of Donahue Schriber, Western Heritage at this time

13  does not seek a specific damage award, but seeks a declaration

14  from this court describing the contribution and indemnity owed by

15  National Surety and Associated Indemnity.  This court in *Great*

16  *American Insurance Company of New York v. North American*

17  *Specialty Insurance Company*, 541 F.Supp.2d 1203 (D.Nev.2008)

18  acknowledged that a summary judgment could be rendered on

19  liability issues alone.  The court specifically stated,

20  　　The court agrees Plaintiff has not presented

21  　　evidence showing what expenses it is entitled

22  　　to as a matter of law.  However, this lack of

23  　　evidence does not affect this court's ability

24  　　to find Defendant is liable for the expenses

25  　　it should have contributed to the *Skender*

26  　　action.  See Fed.R.Civ.P. 56(d)(2) ("An

27  　　interlocutory summary judgment may be

28  　　rendered on liability alone, even if there is

Selman Breitman LLP
ATTORNEYS AT LAW

94622.1 257.31545

1    a genuine issue on the amount of damages.");

2    *see also Thoresen v. Lumbermens Mut. Casualty*

3    *Co.*, 351 F.2d 573 (7th Cir. 1965)….

4    Accordingly, Western Heritage seeks this court's declaration

5    by way of summary judgment that National Surety and Associated

6    Indemnity are liable as described herein for contribution and

7    indemnity and reserves its right to pursue an actual award of

8    damages against National Surety and Associated Indemnity.

9    DATED: June 1, 2015          SELMAN BREITMAN LLP

10

11                                 By:      */s/ Theodore J. Kurtz*

12                                          THEODORE J. KURTZ
                                            NEVADA BAR NO. 1344

13                                          3993 Howard Hughes Parkway, #200
                                            Las Vegas, NV 89169-0961

14                                          Phone: 702.228.7717
                                            Facsimile: 702.228.8824

15                                          Attorneys for Plaintiff/Counter-
                                            Defendant WESTERN HERITAGE

16                                          INSURANCE COMPANY

17

18

19

20

21

22

23

24

25

26

27

28

94622.1 257.31545

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of June 2015, the foregoing **MOTION FOR SUMMARY JUDGMENT ON BEHALF OF THE PLAINTIFF AND COUNTERDEFENDANT WESTERN HERITAGE INSURANCE COMPANY** was served on all parties via the United States District Court CM/ECF system.

_____
BONNIE KERKHOFF JUAREZ
An Employee of Selman Breitman LLP

Selman Breitman LLP
ATTORNEYS AT LAW

94622.1 257.31545

30